Vandell Johnson, AG1099
<br>Name and Prisoner/Booking Number

Kern Valley State Prison
<br>Place of Confinement

P.O Box 5101
<br>Mailing Address

Delano, CA 93216
<br>City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

**FILED**

MAR 1 6 2023

CLERK, U.S. DISTRICT COURT
<br>EASTERN DISTRICT OF CALIFORNIA
<br>BY _____ DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Vandell Johnson
<br>(Full Name of Plaintiff)
<br>    Plaintiff,

v.

(1) Ralph Diaz
<br>(Full Name of Defendant)

(2) H. Moseley

(3) Rick M. Hall

(4) L. Cahayla
<br>    Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 22-cv-00606-DAD-AC
<br>(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT BY A PRISONER**

☐ Original Complaint
<br>☒ First Amended Complaint
<br>☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:

    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983

    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

    ☒ Other: 42 USC §§ 1985(2) & (3), and 1986; Monell Official Policy

2. Institution/city where violation occurred: Folsom State Prison/ Represa

Cont. Add. Defendants
Page 2 of 2

(5) C. Carrillo,

(6) J. R. Pagan,

(7) K. O'Connor,

(8) B. Huston,

(9) J. Albin,

(10) E. Mejia,

(11) H. Montero,

(12) C.A. Rebeterano,

(13) M.C. Jennings,

(14) T. Lee,

(15) J. Sanders,

(16) Mike Lopez,

(17) Mariee H. Hinojosa,

(18) Patrick Foster,

(19) Anne Marie Schubert.

## B. DEFENDANTS

1. Name of first Defendant: __Ralph Diaz__. The first Defendant is employed as: __Director of Corrections__ at __Calif. Dep't of Corr.__
   (Position and Title)                                             (Institution)

2. Name of second Defendant: __H. Moseley__. The second Defendant is employed as: __Chief Ofc. of Appeals__ at __Calif. Dep't of Corr.__
   (Position and Title)                                             (Institution)

3. Name of third Defendant: __Rick M. Hall__. The third Defendant is employed as: __Warden__ at __Folsom State Prison__
   (Position and Title)                                             (Institution)

4. Name of fourth Defendant: __L. Cahayla__. The fourth Defendant is employed as: __Assoc. Warden/ Chief Discipl. Ofcr.__ at __Folsom State Prison__
   (Position and Title)                                             (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☐ Yes    ☒ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

2

Cont. B. Defendants
Page 2 of 2

5. C. Carrillo, Corr. Counselor II(A)/ App. Coord., Folsom State Prison.

6. J. R. Pagan, Investigative Serv. Unit Sergeant, Folsom State Prison.

7. K. O'Connor, Corr. Lt./ Senior Hearing Ofcr., Folsom State Prison.

8. B. Huston, App. Reviewer/ Corr. Lt., Folsom State Prison.

9. J. Albin, App. Reviewer/ Corr. Lt., Folsom State Prison.

10. E. Mejia, Corr. Lt., Folsom State Prison.

11. H. Montero, Corr. Sgt./ RVR Reviewing Supervisor, Folsom State Prison.

12. C. A. Rebeterano, Corr. Sgt., Folsom State Prison.

13. M.C. Jennings, Corr. Ofcr., Folsom State Prison.

14. T. Lee, Corr. Ofcr., Folsom State Prison.

15. J. Sanders, Calif. Corr. Peace Ofcr's. Assoc. Union Rep./Discipl. Ofcr., Folsom State P.

16. Mike Lopez, Calif. Corr. Peace Ofcr's Assoc. Union Rep., Folsom State P.

17. Mariee H. Hinojosa, Calif. Corr. Peace Ofcr's Assoc. Union Rep., Folsom State Prison.

18. Patrick Foster, Deputy District Attorney, Sacramento County.

19. Anne Marie Schubert, District Attorney, Sacramento County.

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: <u>8th Amendment Cruel And Unusual Punishment</u>.

2. **Claim I**. Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: <u>Overdose Response Neglect</u>.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   On Monday December 16, 2019, at approximately 1525 hours Plaintiff (already high all morning-afternoon snorting over a gram of heroin) was escorted from his assigned cell in Unit 2 A5-8 to holding cage #3 at 1545 hours during a random cell search by officers Montes and defendant M. Jennings, for an unclothed body search, at which point Pla. who had a "Kiwi" sized bindle of heroin(28 grams) in his mouth when ordered to submit to have cuffs removed and strip out, faced the rear of the cage, attempted to commit suicide by overdose, began chewing the bindle...ingesting a substantial amount of the drug.

   Defendants Jennings, Rebeterano, and Mejia stood by, doing nothing, merely looking on as Pla. began to succumb to the effects of the drug, alerting no medical staff, as required, leaving Pla in the holding cage cuffed for over 30 minutes- where Mejia speaking to Pla stated "it wasn't personal, but business".

   In the process of chewing/ ingesting the drugs, he began to throw-up(a mixture of food, water, and heroin). Where given that he had no socks or
   Cont.add.pgs...

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Suffered brain damage, loss cognitive functions, periodic black outs, burnt/ diminished taste buds, as well as to his feet.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim I? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Claim I to the highest level? ☒ Yes ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. <u>Jailhouse snitch labelling by guards/ Supervisors intended to chill inmate complaints, constitutes a state-created danger is effective in this regard.</u>

3

Cont. Supp. Facts- Claim I
Page 2 of 3

shoes on, he was standing in puddles of throw-up, absorbing more of the drug through the pores on the bottom of his feet.

At that point the defendants would not take him out the cage, for reason of needing to obtain a camera to photograph him exactly as he was inside the cage. Where defendants Rebetrano, Jennings, and Lt. Mejia asserted he was in a crime scene and they couldn't let him out the cage. A camera was retrieved after 30 minutes(it took 2-3 minutes to take pictures, and for Dft. Jennings to guaze Pla's feet to retrieve suspected heroin off of them, and from spittle on the floor, dawning PPE). By this time, Pla was semi-conscious, after 25 minutes of overdosing.

Prior to photographing him, he sat in the cage cuffed naked(for 15-20 minutes), given his boxers back after 20 minutes.

Medical(although Medical/ the TTA door was only 15-30 ft. away) wasn't called until 1602 hours, where LVN L. Ibarra responded at 1605 hours(at the 25th minute), and observed him in the cage in this condition, who immediately told Dft's Jennings, Rebetrano, and Lt. Mejia to get Pla out the cage "Now!", "Code 3",...observing an apparent suicide attempt aided by the guards

No alarm was ever sounded, as required, in violation of "Emergency Medical Response" procedures, and DOM Section 51010.6, etc.

At the Triage Treatment Area(TTA), arrived at 1616 hours, Pla was immediately hit with his first 4mg dose of Narcan ihtranasal at 1621 hours. Then after placed in the ambulance at 1639 hours he was hit with a 2mg second dose at 1655 hours, leaving the prison with Pla allegely in stable condition.

Upon arriving at the hospital(Mercy Hospital of Folsom) at about 1702, Pla had to use the restroom. An hour in the hospital, the Pla urinated and

Cont. Supp. Facts- Claim I
Page 3 of 3

defecated on himself, before being hit with a third 2mg dose of Narcan.

Plaintiff wasn't provided a cup of water until 45-50 minutes after ingesting the drugs.

## CLAIM II

1. State the constitutional or other federal civil right that was violated: <u>14th Amendment Due Process</u>

2. **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: <u>False reported gram amount/ Evidence tampering, etc.</u>

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Upon being discharged from the hospital on 12-16-19 Plaintiff was placed in Administrative Segregation(ASU), charged with distribution of methamphetamine(187.1 grams, per a 12-16-19 CDCR 128G Classification Chrono), and refusal to submit to a urinalysis(UA).

   As an extension of defendants Jennings, and Rebeterano's neglect, he is believed to have tampered with evidence, utilizing several unauthorized solvents/ solutions to retrieved the regurgitated substance...before taking it to Custody Complex to process it into Locker #1, and 4.

   Processed into evidence were 3 soaked medical steril pads allegedly weighing 106.2 grams collected from the floor, 2 guazes weighing 56.9 grams from the scrappings off Pla's feet, and 23.2 grams per plastic bindle retrieved from the cage floor(sic).

   There is no indication from reports of the chain of custody, or explaining the cause for defendant Pagan's delay in submitting the evidence to the Lab for forensic toxicology chemical testing on 7-31-20 at 9:33 am(6 months later)...yet submitting a prosecution referral to the District Attorney's Office on 1-10-20, raising suspicion of evidence tampering by Dft.s Jennings, Rebeterano, and Mejia, and a cover-up.

   Cont.add.pgs...

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Obstruction of justice, timeliness of delayed forensic toxicology chemical testing, slander/ self- serving statement undermining his position at RVR hearing; Anxiety, stress and duress.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Claim II?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

Cont. Supp. Facts- Claim II
Page 2 of 3

Through toxicology Lab Report No. 20-000015, Agency No. FSP-PU2-19-12-0497 found 20.9 gram gross weight(per results dated 9-11-20), where the Dft's actions distorted the weight, placing it at 187.1 grams to <u>bolster</u> the prosecution referral, and negate liability for Pla's near death experience.

The deliberate distortion of the weight of the substance, compounded by Dft. Mejia's(who signed Pla's "Lock-up Order" to place him in ASU) self-serving statement in response to the related "Refusing To Provide Urine Sample" Rule Violation Report Log# 000000006944870 claiming Pla was "totally coherent" when spoken to at the cage on the day of the occurence, to undermine his claim he was semi-conscious, and therefore incapable of complying, violating due process, resulting in a guilty finding on the RVR, followed by Dft. Lee mixing an eventual urine sample he'd provided with that ofanother inamtes, resulting in a Positive Test Result RVR Log# 000000006964898, dated 2-6-20, with the sample collected on 1-21-20 in Lab Sample I.D: 11013973, Specimen ID CE500018328 received by Phamatec on 2-3-20(Rpt. dated 2-5-20).

The disposition on RVR 6944870 was reversed as a result of Appeal Log# FSP-0-20-00196, at the SLR on 3-9-20, with that of RVR 6964898 arbitrarily affirmed with staff personnel from the appeal review(i.e., SHO, CCII(A), Sgt. Montero, Lt. Albin, Lt. Huston, AW, Warden, Chief OOA, and Director) acquiescing to the guards, subordinates, and supervisors ulterior motives for the due process violation, contrary to the <u>Madrid</u> "Remedial Plan", and in accordance with policy, immediately suspending Pla's visits on 12-16-19 pre RVR disposition, without the infraction alleging Pla "introduced" the drug into the institution/ facility, that it was packaged for "distribution", or was connected to visiting, as required by CCR § 3176.4(a), (c), 3314(e)(2), or 3315(f)(5)(B), denying witnesses, affirming arbitrary relevance determinations, within the meaning of CCR § 3315(e)(1)(B), 3318(a)(1)(C), 3320(i), (1),

Cont. Supp. Facts- Claim II
Page 3 of 3

and counterfeit investigations, especially given that Dft's Jennings, and Rebeterano was fired as a result of their neglect/ inaction.

## CLAIM III

1. State the constitutional or other federal civil right that was violated: __1st Amendment__

2. **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☒ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☒ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: __RVR "Stacking" arising out of overdose/Vindictive Prosecution__

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   As a result of defendants Jennings, Rebeterano, and Mejia's actions neglecting to respond to Pla's attempted suicide by drug overdose, they stacked the deck attacking him with retalitory RVR's allegedle for Refusing To Produce Urine Sample at the time of the overdose on 12-16-19 at approximately 1526 hours (postmarked timestamped) while semi-conscious Logged# 000000006944870 (disregarding his claim an indepemdent UA was performed at the hospital)(the results which were requested, but never provided), then another while in ASU Log# 000000006964898 dated 2-6-20 for a Positive UA (Meth., and heroin), as mentioned above in Claim II in the "mixing" instance...whereas "Stacking" of RVR's in inmates disciplinary proceedings is prohibited per a 6-23-98 CDCR Memorandum to all Wardens, from Deputy Dir. David Tristian.

   Given the timeline of the Dft's retalitory acts, a nexus is seen in the dates of actions following allegations of impropriety by staff in the complaint filed by his wife with the Office of Internal Affairs Log# _____ and or in RVR proceeding.

   Cont.add.pgs...

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Deprived of rehabilitative benefits of the visiting program; Traumatized, emotional/ mental distress; Subjection to physical altercations by "Jailhouse Snitch" labelling; Property loss; Effect on family; Double Jeopardy, and Goodtime Credit, etc.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Claim III?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Claim III to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

5

Cont. Supp. Facts- Claim III
Page 2 of 4

Plaintiff advised the Administration(Dft. Cahayla) at Committee on 1-11-20 regarding his release from ASU, of his concerns of retaliation/ problems if sent back to the same building(1st Tier A-Side), with the same guards/supervisors being regulars in the Building, subjecting him to being closely monitored, and isolated from other inmates. Despite his concerns, the Dft. sent him back to A-Side, and signed off on a sebsequent retalitory RVR's disposition.

In the 6944870 RVR proceedings, Investigative Employee's Dft. Sanders assigned on 12-23-19(Report dated 1-6-20), and A. Russell assigned to RVR 7029789 on 10-27-21(Report dated 12-22-21) reporting to SHO Dft. O'Connor, was aware of his position defendants Jennings/ Rebeterano assisted in his attempted suicide by overdose neglect, authorized three retalitory cell searches(including a crushed asprin testing incident, and the taking of his T.V), and of the "Snitch" label placed on him by the guards/ supervisors, to chill his complaints.

As here, the issue of widespread drug overdose response neglect, and lack of training, adequate policy for supervisors of monitoring/ treatment throughout CDCR(specifically Folsom State Prison)^(subject of audits) by the Office of the Inspector General, then at the January 20-21, 2004 Senate Select Committee hearings on Corrections Madrid v. Gomez, USDC- ND No. C90-3094 TEH Special Masters 6-24-04 report(specific to Exh. "26), PBSP Knowles/Palmer report references), was a conflict with union representatives(Dft's Sanders, Lopez, or Hinojosa, in this case) involvement in complaint investigations interview processes/ RVR proceedings, with their undue influence on HO/ Complaint Reviewers, "violates the very tenets of law enforcement investigations", calling for a "firewall", whereas CDCR 115/ 7219 related conspiracies find their roots in the interview

Cont. Supp. Facts- Claim III
Page 3 of 4

processes, with a nexus to interviews/ procedures dates and retalitory acts/ attacks(stacking of the RVR's), the union supporting guards wrongdoing, soliciting false reportings, etc., and with the Administration complicit in the cover-ups, reviewing findings and recommendations- seen by signatures.

The counterfeit appeals investigative process, as a result of union interferrence, was also the subject of OIG annual reports, to show a continuous pattern of overdose response neglect, whether attributed to an egregious act, or to lack of training.

The union in meeting with complaint reviewers, is where agreements were found to occur.

Defendants Jennings, and Rebeterano's firing, as a result of their negligence in responding to Pla's overdose would have been known to SHO defendant O'Connor when adjudicating RVR's Log# 6944870, and 7029789, still found him guilty on 1-12-20 and 12-23-21 respectively, suspending visits until 12-23-22 (loss family visits 12-22-24 thru 12-22-27), the same can be said of Lt. C.O O'Hagan hearing RVR Log# 6964893 on 3-20-20 re Use Of Controlled Substance.

CDO(defendant Cahayla) following the SHO's disposition on RVR's Logged# 6944870, and 7029789 affirmed the findings, excessive sanctions, despite discrepancy in weight/ gram amount, and visits(already having been wrongly suspended since 12-16-19), immediately after the overdose incident, in violation of due process, knowing of Jennings, and Rebeterano's firing at the time of the guilty finding, with Sanders the Reporting Employee on the RVR, and the unions role in stacking the deck. Where he was authorized to suspend the disciplinary sanction during an audit of the RVR per DOM Section 52080.9.3.

Cahayla would have known of the motive behind the retalitory RVR's.

The Administrative acquiescence from the CCII(A) Carrillo, AW Cahayla,

Cont. Supp. Facts- Claim III
Page 4 of 4

Warden Hall, OOA Moseley, up to the Director Diaz, seen in response to appeals Logged# FSP )-20-00401, FSP 0-20-00196(granted at the SLR on 3-9-20, showing the SHO decision to have been arbitrary), 000000218683, 000000214955, given FSP guards history of drug overdose response neglect incidents, corrupt, counterfeit investigations, inadequate appeals system, arbitrary appeal denials, new ploicy of deliberately missed response deadline(after nearly a year sitting on them), or refusing to respond altogether, as to inquiries into the firing of Jennings, and Rebeterano, all issues subject of the Senate hearings, implicated in the Madrid Special Masters report, and shown to be continuing practices departmentwide in the OIG's annual reports, contrary to the "Remedial Plan", and policy.

Defendants Schubert, and Foster, also in accordance with official policy, filed charges against Pla on 2-14-20 (referred on 1-10-20) despite a botched investigation/ evidence tampering, aware of the firing of defendants Jennings, and Rebeterano, where Pla's case would not have met prosecution referral criteria in Sacramento County under the circumstances, absent vindictiveness of the defendants.

### E. REQUEST FOR RELIEF

State the relief you are seeking:

Compensatory damages in the amount of $50, 000 from each Dft.;
Punitive damages in the amount of $50, 000 from each Dft., to include emotional/ mental distress;
Expungement of Pla's C-File of all related RVR's;
Any additional relief the court deems equitable, and just.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____3-8-23_____          _____/s/_____
               DATE                           SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)

### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

6